# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KATRINA WILLIAMS SEALS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **2:12-cv-2634-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Katrina Williams Seals ("Seals") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Seals filed an application for Title II disability insurance benefits and for Title XVI Supplemental Security Income with a protective filing date of April 13, 2009, alleging a disability onset date of February 4, 2009, due to problems caused

by morbid obesity and depression.[1]  (R. 135, 127).  After the SSA denied Seals' claim, she requested a hearing before an ALJ.  (R. 81-82).  The ALJ subsequently denied Seals' claim, (R. 20-29), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6).  Seals then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

---

[1]  Seals is only challenging here the ALJ's findings with respect to her physical impairments.

1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Seals had not engaged in substantial gainful activity since February 4, 2009, and, therefore, met Step One. (R. 24). Next, the ALJ found that Seals satisfied Step Two because she

4

suffered from the severe impairments of "morbid obesity and depression." *Id*. The ALJ then proceeded to the next step and found that Seals failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id.* Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Seals

> has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, or scaffolds; or crawl. She can occasionally balance, stoop, kneel, crouch, and climb ramps or stairs. She should avoid extreme cold and heat, and all hazards such as unprotected heights and dangerous machinery. She would be moderately limited in her ability understanding, remembering, and carrying out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general-public; accept instructions and respond appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. She can learn and remember simple work routines. She can understand, remember, and carryout simple instructions. She can tolerate ordinary work pressures, but needs to avoid extreme work pressures. Contact with the public should be casual, and she can adapt to infrequent, well explained changes.

(R. 26). In light of her RFC, the ALJ held that Seals "is unable to perform any past relevant work."[2] (R. 28). Lastly, in Step Five, the ALJ considered Seals' age, education, work experience, and RFC and determined "there are jobs that exist in

---

[2] As of the date of the ALJ's decision, Seals was 34 years old with a limited education, and had past relevant work that included medium semi-skilled work as a certified nursing assistant, and light work as a unit clerk. (R. 28, 61-62).

significant numbers in the national economy [Seals] can perform." *Id.*  Therefore, the ALJ found that Seals "has not been under a disability, as defined in the Social Security Act, from February 4, 2009, through the date of this decision." *Id.*.

### V.  Analysis

The court now turns to Seals' contentions that the ALJ erred because he did not (1) properly assess her obesity in combination with her other impairments; (2) support his RFC assessment with a medical source opinion; and (3) properly develop the record.  *See* doc. 9 at 6-12.  The court addresses each contention in turn.

    A.    <u>The ALJ properly considered Seals' obesity and other impairments in combination.</u>

Seals asserts that it was "particularly important" for the ALJ to properly analyze the effect of Seals' "obesity and all of her physical problems," and contends the ALJ "did not make any findings on what these physical problems were in terms of severe, non severe or even medically determinable impairments."  Doc. 9 at 6.  Unfortunately for Seals, the record belies her contentions.  In fact, the ALJ specifically found that "[a] review of all the available medical evidence indicates that all of the claimant's physical problems are caused by her obesity," (R. 26), which he held was a severe impairment.  (R. 24).  The ALJ also stated that he "evaluated [Seals'] morbid obesity *and accompanying impairments* in accordance with Social Security Ruling [SSR] 02-01p," and explained that the "ruling provides that I must assess the effect that morbid

obesity has on [Seals'] ability to perform routine movement and necessary physical activity within the work environment." (R. 26-27) (emphasis added). These statements show the ALJ followed the ruling when he considered Seals' obesity and other impairments. *See* SSR 02-1p, 2002 WL 34686281, *6 (S.S.A.) (explaining that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity," and that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment"). In other words, contrary to Seals' contention, the ALJ properly considered Seals' obesity in combination with her other impairments under SSR 02-1p, and found that together they would not prevent Seals from performing a reduced range of sedentary work.

In performing the assessment required by SSR 02-1p, the ALJ acknowledged Seals' allegations of "swelling, chest pain and lower back pain," but found her allegations were not supported by the evidence. (R. 26). In support of this finding, with respect to Seals' alleged chest pain, the ALJ noted that "treating source records during the relevant period are devoid of any cardiac diagnosis," and also gave significant weight to the findings of Dr. David Brower, the consultative examiner, who found a regular heart rate and rhythm, normal S1 and S2, and no extra sounds or murmurs on cardiovascular exam. (R. 26-27, 251). Next, regarding Seals' alleged physical limitations, the ALJ observed that Dr. Brower's examination also showed

Seals had a normal gait, normal muscle bulk and tone, and that her strength was 5/5 in the upper and lower extremities. (R. 27, 251-52). In conclusion, the ALJ stated that the "findings of the above doctors reveal that the claimant is capable of functioning at a sedentary standard consistent with the claimant's residual functional capacity." (R. 27).

Seals disagrees with the ALJ's findings, contending that "[t]here were many indications that [Seals] would not be able to sustain work on a regular and continuing basis." Doc. 9 at 8. To support her contention, Seals cites first to her hospital records of June 2006 that noted "her dyspnea was as a result of her underlying obesity (as well as humidity)." *Id.* Unfortunately for Seals, the record shows also that she was able to continue working until October 2008, when she testified that she stopped working when her hospital employer closed its operations. (R. 46). Seals' continued employment establishes that the dyspnea she experienced in 2006 was not disabling.

Seals asserts next that she is disabled because Dr. Brower's examination found "2+ pitting edema in the lower extremities and the upper extremities were edematous as well," and "diagnosed [her with] morbid obesity with functional limitations." Doc. 9 at 8-9. However, Dr. Brower did not quantify the extent of the functional limitations, and as the ALJ noted, Dr. Brower found that Seals had a normal gait, normal muscle bulk, normal tone, and 5/5 strength in the upper and lower extremities. (R. 251-53). Moreover, Seals failed to direct the court to medical evidence that

8

established that her edema caused physical limitations that would prevent her from performing the reduced range of sedentary work reflected in the ALJ's RFC assessment. Without such evidence, the existence of an impairment is insufficient because "the mere existence of . . . impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard." *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). As the case law states clearly, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(c) ("You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled . . . ."). Because Seals failed to meet this burden by showing her obesity causes limitations in her physical or mental functioning greater than those found by the ALJ, the court finds that substantial evidence supports the ALJ's findings and there is no reversible error.

    B.    <u>The ALJ was not required to support his RFC assessment with a medical source opinion.</u>

Seals' next contention is that the ALJ erred because his RFC is not based on a medical source opinion (MSO). Doc. 9 at 9-12. Although Seals acknowledges there is no express requirement for an RFC assessment from a medical source, she argues that one is required as a practical matter to avoid an ALJ substituting his judgment for that

9

of a physician. Doc. 9 at 10. Unfortunately for Seals, the regulations and the law of this circuit do not impose such a requirement. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d). One of the specifically reserved examples is a claimant's RFC: "Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished). It has also found an ALJ's RFC finding can be supported by substantial evidence even without a medical source statement. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment). Here, the ALJ properly relied on evidence from Dr. Brower and treating sources to assess Seals' RFC. (R. 26-27). Because there was

sufficient medical evidence to allow the ALJ to assess Seals' RFC and determine whether she was disabled, the record was complete.  *See* 20 C.F.R. § 404.1513(e).  Consequently, no medical source opinion was required, and the ALJ committed no reversible error.

      C.    <u>The ALJ did not fail to properly develop the record.</u>

Seals final contention is that the ALJ failed to properly develop the record because he should have obtained an MSO by recontacting Dr. Brower, ordering another consultative exam, or utilizing a medical expert.  Doc. 9 at 11.  However, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"  *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981).  Therefore, "although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record."  *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).  Unfortunately Seals has not identified any gaps in the evidence that cause unfairness or prejudice in the absence of a second consultative examination or testimony from a medical expert, and has not shown that Dr. Brower's examination was incomplete because of the lack of an MSO.  In fact, Seals would have difficulty making such a showing because the regulations

provide that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). Ultimately, to the extent there was a deficiency in the evidence, it resulted from Seals' failure to satisfy her burden of showing how her impairments affected her functioning. *See* 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276. Therefore, Seals has not demonstrated the ALJ committed reversible error by failing to develop the record by obtaining an MSO.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Seals is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with the memorandum of decision will be entered.

Done this 26th day of June, 2014.

/s/ Abdul Kallon
_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE